**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

ADAM LIPINSKI, individually and on behalf of all others similarly situated,

                Plaintiffs,

vs.

APPROVED PLUMBING AND FIRE PROTECTION LLC; APPROVED OIL CO. OF BROOKLYN INC.; VINCENT THEURER; and IRA AUSLANDER

                Defendants.

Civil Action No. 1:19-cv-04534-AMD-ST

**SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**

**JURY TRIAL DEMAND**

        Plaintiffs, individually and on behalf of all others similarly situated, by their attorneys, The Law Office of Christopher Q. Davis, PLLC, allege, upon personal knowledge and upon information and belief as to other matters, as follows:

## NATURE OF ACTION

        1.    This is a collective and class action brought by Lead and Putative Class Representative Plaintiff Adam Lipinski (the "Representative Plaintiff"), "Lead Plaintiff"), any other individuals who file a consent to join form with the Clerk of the Court (the "Opt-Ins"), and all putative plaintiffs (collectively, the "Plaintiffs"), on his own behalf and on behalf of the putative Collective and putative Rule 23 Class identified below. Plaintiffs and the putative Class Members and putative Collective Members were or are employed by Defendants Approved Plumbing and Fire Protection, LLC ("Approved Plumbing"), Approved Oil Co. of Brooklyn Inc. ("Approved Oil", together with Approved Plumbing, referred to herein as "Approved" or "Corporate Defendants"), Vincent Theurer ("Theurer"), and Ira Auslander ("Auslander", together with Theurer the "Individual Defendants", and the Individual Defendants together with the Corporate

Defendants are referred to herein as the "Defendants") as non-exempt hourly Foremen/Field Mechanics/Plumbers (referred to herein as "Field Mechanics") and were denied overtime premium compensation and gap-time pay by requiring them to work "off-the-clock" and/or shaving time off their clocked time. Defendants also failed to provide Plaintiffs and the putative Class with wage notices and with accurate wage statements in violation of New York Labor Law ("NYLL") §195(1) and (3). The putative Class and Collective are similarly situated to the Plaintiffs under Federal Rule of Civil Procedure 23 and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) and have suffered the same violations pursuant to Defendants' common policies and practices.

2.     The Collective is made of all persons who are or have been employed by Defendants as Field Mechanics any time within the three years prior to this action's filing date through the date of the final disposition of this action (the "Collective Period") and who were subject to Defendants' unlawful policies and/or practices of failing to pay Plaintiffs overtime premiums for all hours worked over 40 in a given workweek, and failing to keep accurate records of hours Plaintiffs actually worked.

3.     The Class is made up of all persons who are or have been employed by Defendants, as Field Mechanics within the period of six years prior to this action's filing date through the date of the final disposition of this action (the "Class Period") and who were subject to Defendants' unlawful policies and/or practices of: (1) failing to pay Plaintiffs gap time compensation for hours worked under 40 in a given workweek, (2) failing to pay overtime premiums for all hours worked over 40 in a given workweek, (3) failing to keep accurate records of hours Plaintiffs actually worked, and (4) failing to provide Plaintiffs with accurate wage notices and wage statements.

4.      Plaintiffs seek relief for the Class pursuant to the applicable provisions of the NYLL and for the Collective pursuant to the applicable provisions the FLSA to remedy the Defendants' failure to pay all wages due.

## PARTIES

5.      Individual and Representative Plaintiff Adam Lipinski is a former Field Mechanic and presently and at all relevant times resided in Brooklyn, New York.  He began his employment with Defendants in February 2018 and was terminated in August 2018.

6.      Defendants Approved Oil and Approved Plumbing are New York corporations with principal places of business at 6717 Fourth Avenue, Brooklyn, NY 11220.

7.      The Individual Defendants, upon information and belief, reside in New York State and maintain their principal place of business at 6717 Fourth Avenue, Brooklyn, NY 11220.

8.      Lead Plaintiffs and the putative Class and putative Collective are presently or were previously employed by the Defendants as Field Mechanics.

9.      The Lead Plaintiffs first worked for a company called City Wide Plumbing, which upon information and belief was owned by individual Defendant Ira Auslander.

10.      Then, on or about February 24, 2016, Auslander registered a new company called Approved Plumbing and Fire Protection LLC with the New York State Department of State.

11.      Thereafter the Lead Plaintiffs began working for Auslander at his newly formed company, Approved Plumbing, which upon information and belief is a wholly owned subsidiary of Approved Oil.

12.      The Department of State ID number for Approved Plumbing is 4901695.

13.       Approved Plumbing is incorporated in Kings County at 6717 4th Ave., Brooklyn, New York 11220.

14.     Approved Oil and Approved Plumbing are both located in the same office at 6717 4th Ave., Brooklyn, New York 11220.

15.     Upon information and belief, most of the individuals who were working for Auslander at City Wide Plumbing, prior to the establishment of Approved Plumbing, were thereafter hired by Approved Plumbing to work in what was effectively the same exact job, but under the new umbrella of Approved Oil.

16.     Lead Plaintiffs and the putative Class and Collectives' health and other insurance benefits were and are provided by and through Approved Oil.

17.     At all relevant times, all the Defendants have met the definition of Plaintiffs' "employer" under Section 3(d) of the FLSA, 29 U.S.C. § 203(d) and NYLL §190(3).

18.     Upon information and belief, all of the Defendants jointly maintain control, oversight, and direction over the operations and employment practices for Approved Plumbing.

19.     Approved Oil and Approved Plumbing have commonly managed human resources, benefits, and labor functions.

20.     As such, upon information and belief, Defendant Theurer, the President and CEO of all Approved Oil's companies, had the power to hire and fire Field Mechanics, supervised and controlled the work schedules and conditions of employment of the Field Mechanics, determined and/or had ultimate oversight authority over the rate and method of payment of the Field Mechanics, and maintained the employment records for all Field Mechanics.

21.     Specifically, Defendant Theurer is responsible for overseeing all the daily operations of all the Approved Oil businesses, including but not limited to the daily business operations of Approved Plumbing.  Thus, Theurer had ultimate control over the work schedules,

rates of pay, and conditions of employment for the Lead Plaintiffs and the Class and Collective Members.

22.     The Corporate Defendants have operated together as a single common enterprise in conducting business, including the business practices described in this Amended Complaint.

23.     The Corporate Defendants are interrelated companies that have common ownership, officers, managers, supervisors, product, and corporate purpose.

24.     At all times hereinafter mentioned, Defendants employed employees, including Plaintiffs, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials have moved in or produced for commerce within the meaning of Section 3(b), (g), (i) and (j) of the FLSA, 29 U.S.C. § 203(b), (g), (i), (j), (r) &(s).

25.     Defendants' gross volume of business is not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

### JURISDICTION & VENUE

26.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  The Court also has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1332.

27.     In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 207 *et seq*.

28.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

29.     Venue is proper in the United States District Court, Eastern District of New York pursuant to 28 U.S.C. § 1391, because the wage violations which give rise to Plaintiffs' claims occurred in this District.

30.     This Court has personal jurisdiction over Defendants because they reside in and routinely transact business in New York.

## WAGE AND HOUR COLLECTIVE
## AND CLASS ACTION FACTUAL ALLEGATIONS

31.     Approved Oil is an oil company with operations in the New York metropolitan area.

32.     Approved Oil has expanded its services to offer total care for customers' heating equipment, including preventive maintenance, emergency service and installation of new equipment.

33.     President and CEO of Approved Oil, Vincent Theurer, has expanded his family business by acquiring small to mid-sized businesses as part of its strategy to expand its services to customers within New York City.

34.     One of the companies that Approved Oil acquired and/or otherwise launched, in order to expand its reach into plumbing and fire services, was Approved Plumbing.

35.     Approved Plumbing is under the larger umbrella of Approved Oil, and upon information and belief, is wholly owned subsidiary of Approved Oil.

36.     Approved Plumbing utilizes in-house Field Mechanics to provide commercial and residential technical support for their customers, including fire sprinkler repairs and installations, emergency response plans, backflow prevention design, testing and installation, grease trap and grease interceptor installation, Con-Ed high pressure steam station services, gas lines, gas meters, gas testing and gas boosters, water meter installations and permitting for domestic and fire service water maters, and all other commercial plumbing repairs and installations.

37.     Defendants have a principal place of business in Brooklyn, New York, through which Approved provides customer service support to residential and commercial customers within the New York City Metropolitan area.

38.     Upon information and belief, Defendants have employed over 40 in-house Field Mechanics within the Class Period.

**Defendants' Timekeeping Systems and Their Pattern and Practice of Time Shaving.**

39.     Initially, Defendants utilized paper timesheets to record Plaintiffs hours worked.

40.     During the time when paper timesheets were utilized, Plaintiffs' supervisors were responsible for inputting each Field Mechanics time into the payroll system.

41.     In or around early 2018, Defendants switched to an electronic timekeeping system called ClockShark.

42.     ClockShark was a new timekeeping software that Plaintiffs were required to use during the workday to track all of their activities.

43.     ClockShark included an application on the Plaintiffs phones, which they were expected to use to clock in and out of their assignments throughout the day.

44.     For example, Plaintiffs would clock in when they got to the base in the morning, then they would clock in again when they arrived at their job site.  This would record the amount of time it took for them to drive from the base to their first job site.

45.     Field Mechanics are assigned to weekly shifts that consisted of 5 days, working from 7:00 A.M. to 3:30 P.M. each day.

46.     For each day worked, the ClockShark schedule reads only from 7:00 A.M. to 2:30 P.M.; however, Plaintiffs were expected to work until the assigned 3:30 P.M. time each day, regardless of the official ClockShark timing.

47.     Moreover, Plaintiffs were frequently pressured by Defendants to continue working past 3:30pm, even if they had already clocked out, and were not paid for such post-shift hours worked.

48.     While the ClockShark software tracks Field Mechanics' schedules on a daily basis, none of the Plaintiffs were actually paid based on all of their actual time logged in ClockShark.

49.     Rather, Defendants automatically deducted time, including for time worked uring an unpaid lunch break and post-shift hours work, from the hours recorded on ClockShark when issuing Plaintiffs' pay.

50.     Plaintiff Lipinski had taken a few screen shots from ClockShark that showed that Defendants were shaving time from his ClockShark records to his pay records.  Upon information and belief, the ClockShark records for the other Lead Plaintiffs and putative Class and Collective Members will show similar time shaving practices.

51.     For example, the week ending March 11, 2018 Plaintiff Lipinski's ClockShark records showed that he worked 40 hours of "REG" and 13 hours and 31 minutes of "OT".  Plaintiff Lipinski's corresponding paycheck and statement reflect that he was paid for 40 hours at his regular rate and only 8 hours of OT.

52.     The week of March 18, 2018, Plaintiff Lipinski's ClockShark records showed that he worked 40 hours "REG" and 4 hours and 37 minutes of "OT" but was only paid for 1 hour of OT on his paycheck that week.

53.     The week March 25, 2018, Plaintiff Lipinski's ClockShark records showed that he worked 40 hours "REG" and 5 hours and 17 minutes of "OT" but was only paid for 1 hour of OT on his paycheck that week.

54.     The week April 1, 2018, Plaintiff Lipinski's ClockShark records showed that he worked 9 hours "REG" but he was only paid for 8 hours of REG on his paycheck that week.

55.     Defendants are in possession, custody and control of the all the ClockShark records for the Lead Plaintiffs, as well as the rest of the putative Class and Collective Members, which, upon information and belief, show that Plaintiffs recorded more hours worked than Defendants actually paid.

56.     As a result of Defendants failure to maintain accurate payroll records, as set forth above and below, that reflect that actual amount of time that Plaintiffs worked, Defendants failed to furnish Plaintiffs and members of the Class with accurate and/or complete wage statements on each payday, that included the total regular and overtime hours worked each week and the full amount of wages earned during the pay period.

**Defendants' Unlawful "Off the Clock" Practice of Forcing Plaintiffs to Work During Unpaid Lunch Breaks.**

57.     In order to provide Approved customers with adequate service, Defendants require non-exempt hourly Field Mechanics to meet demanding productivity requirements each workday, forcing Plaintiffs to work in excess of 40 hours per week in order to avoid disciplinary action.

58.     As a result, Plaintiffs regularly worked "off-the-clock" through their unpaid half-hour meal breaks.

59.     Field Mechanics are assigned to weekly shifts that consist of 5 consecutive 8.5-hour days, or 42.5 hours a week, with a half-hour unpaid meal period that is automatically deducted from each daily shift.

60.     For example, each of the Lead Plaintiffs' regular shift was Monday through Friday from 7:00 A.M. to 3:30 P.M.

61.     Plaintiffs were told they were required to clock out for lunch and indicate on ClockShark that they took a 30-minute lunch break.

62.     Prior to ClockShark, when the paper timesheets were used, there was no space for Plaintiffs to record when they started and stopped their lunch break or that they worked through a lunch break, nor did Defendants require the Plaintiffs to record this information.

63.     However, given the demands to complete jobs in a tight schedule, Plaintiffs would "show" a lunch but then continue working at the job site they were at or otherwise drive to their next job site.

64.     For example, on several occasions, Plaintiff Adam Lipinski was recorded to have taken a 30-minute lunch break at 12:30 pm, but was also required to drive to his next job site during that break, during which he ate his lunch while working.

65.     As a result, the Lead Plaintiffs frequently worked off-the-clock during their unpaid meal break; however, Defendants failed to compensate them, whether at overtime premium rates or straight time rates, for this off-the-clock time worked.

66.     On average, the Lead Plaintiffs worked through their unpaid lunch break at least two (2) or three (3) days each week, which would result in one (1) hour to one and one-half (1.5) hours of unpaid time each week.

67.     This unpaid time worked resulted in unpaid overtime for the Lead Plaintiffs each and every week that they worked a full 5-day workweek or unpaid straight time for any weeks they did not work at least 5-full days (*i.e.* any weeks they took a vacation or sick day).

68.     In general, the Lead Plaintiffs worked full 5-day workweeks, from at a minimum 7am to 3:30pm. Therefore, each such full 5-day workweek, the time the Lead Plaintiffs spent working during their unpaid meal breaks resulted in unpaid overtime hours worked.

69.     During the infrequent weeks where the Lead Plaintiffs did not work a full 5-days from 7am to 3:30pm, because they took a sick day or vacation day, the time the Lead Plaintiffs spent working during their unpaid meal breaks resulted in unpaid straight time hours worked.

70.     Defendants, pursuant to commonly enforced policies and practices, failed to provide Plaintiffs with any means or method, let alone any procedure, for recording actual hours worked during unpaid lunch breaks.  This violates the NYLL and FLSA, which require employers to maintain accurate payroll records.  Indeed, even when Plaintiffs attempted to record a missed lunch or made verbal reports to their supervisors that they worked through lunch, they were not paid for this time worked despite the awareness of Approved's management, in violation of the FLSA and NYLL.

71.     As a result of Defendants failure to maintain accurate payroll records that reflect that actual amount of time that Plaintiffs worked, Defendants failed to furnish Plaintiffs and members of the Class with accurate and/or complete wage statements on each payday, that included the total hours worked each week and the full amount of wages earned during the pay period.

**Defendants' Unlawful "Off the Clock" Practice of Forcing Plaintiffs to Perform Post-Shift Work After Clocking Out.**

72.     Plaintiffs also worked additional hours beyond the end of their shift which they were similarly not compensated for.

73.     Specifically, Defendants (a) shaved off time worked at the end of a shift even if it was clocked on ClockShark; (b) would not allow Plaintiffs to clock back in when they went out on emergency runs after clocking in; or (c) would not compensate the Plaintiffs who were responsible for driving the Approved trucks back to the depot for the time spent driving such trucks back to the depot after 3:30pm.

74.     In fact, ClockShark would often show that Plaintiffs were performing work after 3:30pm; however, they were generally not compensated for all such additional time worked.

75.     In general, many Field Mechanics were also responsible for driving the Approved trucks, and therefore were responsible for picking up the trucks in the morning and dropping them off at the end of the day.

76.     The time spent driving the trucks back to the depot, depending on traffic conditions, could result in 30 minutes to an hour of off-the-clock time worked.

77.     Additionally, Plaintiffs were frequently pressured to perform additional post-shift off-the-clock work.

78.     For example, the Lead Plaintiffs would sometimes be sent back out to a "emergency call" after their shift ended and they had clocked out; however, they were not be allowed to clock back in during such emergency calls.

79.     These emergency calls resulted in Plaintiffs worked significant amount of time off-the-clock.

80.     In general, the Lead Plaintiffs worked full 5-day workweeks, from at a minimum 7am to 3:30pm. Therefore, each such full 5-day workweek, the time the Lead Plaintiffs spent working after they clocked out resulted in unpaid overtime hours worked.

81.     During the infrequent weeks where the Lead Plaintiffs did not work a full 5-days from 7am to 3:30pm, because they took a sick day or vacation day, the time the Lead Plaintiffs spent working after they clocked out resulted in unpaid straight time hours worked.

82.     Defendants, pursuant to commonly enforced policies and practices, failed to provide Plaintiffs with any means or method, let alone any procedure, for recording actual hours worked during unpaid lunch breaks.  This violates the NYLL and FLSA, which require employers

to maintain accurate payroll records.  Indeed, even when Plaintiffs attempted to record a missed lunch or made verbal reports to their supervisors that they worked through lunch, they were not paid for this time worked despite the awareness of Approved's management, in violation of the FLSA.

83.     As a result of Defendants failure to maintain accurate payroll records that reflect that actual amount of time that Plaintiffs worked, Defendants failed to furnish Plaintiffs and members of the Class with accurate and/or complete wage statements on each payday, that included the total hours worked each week and the full amount of wages earned during the pay period.

**Defendants Have Knowledge Of The Widespread "Off-The-Clock" Practices**

84.     Defendants' knowledge of the pervasive and widespread nature of the off-the-clock violations alleged herein is well documented and implicates all levels of management – all the way up to Ira Auslander, the CEO of Approved Plumbing and, upon information and belief, Vincent Theurer, the CEO of Approved Oil, in willful violation of the labor laws.

85.     Plaintiffs frequently reported – through ClockShark and otherwise – that they were forced to work through their unpaid lunch and after their shift ended without compensation.

86.     In fact, Plaintiffs were directed by management, including but not limited to Auslander and his son, Josh Auslander, to clock out for lunch and continue working.

87.     The Lead Plaintiffs complained about working through lunch and after their shifts ended to management, including but not limited to Josh and Ira Auslander, on numerous occasions throughout the Class and Collective Period.

88.     For example, Plaintiff Lipinski complained about working off-the-clock to Agnes (LNU), who was a secretary.  Plaintiff Lipinski would complain to Agnes in Polish.  She would often respond, in sum and substance, "sorry guys."

89.     Plaintiff Lipinski also emailed complaints to his boss Josh regarding off-the-clock work and time shaving.  Josh said that he would look into it, but nothing was ever done.

90.     The Plaintiffs' collective frustration with working through their unpaid lunch and after their shift ended on an almost daily basis was well known by Approved management.

91.     As to the off-the-clock time both pre-and post-shift, Approved undeniably had knowledge of such off-the-clock work because it was performed at the direction of management and was explicitly unreported at management's direction.

## FLSA COLLECTIVE ACTION ALLEGATIONS

92.     Plaintiffs incorporate by reference all of the factual allegations made in the preceding paragraphs.

93.     Defendants employed Plaintiffs during the Collective Period.

94.     Defendants classified Plaintiffs and Members of the Collective as non-exempt for the purposes of the FLSA.

95.     Upon information and belief, there are approximately more than 40 current and former Field Mechanics who are similarly situated to Plaintiffs and who were denied overtime compensation.

96.     The Lead Plaintiffs represent other Field Mechanics and are acting on behalf of Defendants' current and former Field Mechanics interests as well as their own interests in bringing this action.

97.     Defendants unlawfully required Plaintiffs and all individuals employed as Field Mechanics to work through their unpaid half-hour meal breaks and/or after their scheduled shifts.

98.     At all times during the Collective Period, Defendants, as a matter of common policy and/or practice, have not paid Plaintiffs lawful overtime premiums for all hours worked in excess of 40 hours in a work week.

99.     Plaintiffs seek to proceed as a collective action, pursuant to 29 U.S.C. §216(b), on behalf of themselves and the following class of persons:

**Collective Class:**     All individuals employed by Defendants as Field Mechanics, Foreman, Plumbers, or similar title/similar job duties, including but not limited to Leads, at any point during the Collective Period who earned but were not paid lawful FLSA overtime premiums for hours worked over 40 in a work week during the Collective Period based on the practices alleged herein.

100.     Specifically, the Collective is further defined as involving claims for unpaid overtime compensation for Defendants' practice of forcing Plaintiffs to work "off the clock" and without compensation during unpaid meal breaks and after their scheduled shifts, which they knowingly suffered and permitted, and/or commonly enforced FLSA recordkeeping practice violations which resulted in unpaid wages.

101.     As such, the Named Plaintiffs and the Collective suffered damages for unpaid earned overtime wages under the FLSA in each of the weeks they worked during the Collective Period.

102.     Defendants were aware or should have been aware that the law required it to pay non-exempt employees, including Plaintiffs and the Collective, an overtime premium of 1 and ½ times their regular rate of pay for all work-hours Defendants suffered or permitted them to work in excess of 40 per workweek.

103. Defendants' conduct, as set forth in this Complaint, was willful and in bad faith, and has caused significant damages to Plaintiffs and the Collective.

104. Defendants are liable under the FLSA for failing to properly compensate Plaintiffs and the Collective, and as such, notice should be sent to the Collective.

105. There are numerous similarly situated current and former employees of Defendants who were subject to the aforementioned policies in violation of the FLSA who would benefit from the issuance of a Court supervised notice of the present lawsuit and the opportunity to join in the present lawsuit.

106. Those similarly situated employees are known to the Defendants and are readily identifiable through Defendants' records.

## FEDERAL RULE OF CIVIL PROCEDURE
## RULE 23 NEW YORK CLASS ALLEGATIONS

107. Plaintiffs incorporate by reference all of the factual allegations made in the preceding paragraphs.

108. Plaintiffs seek to proceed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following defined classes:

**Proposed Class:** All individuals employed by Defendants as Field Mechanics, Foreman, Plumbers, or similar title/similar job duties, including but not limited to Leads at any point during the Class Period who earned but were not paid lawful NYLL overtime premiums for hours worked over 40 in a work week and/or their agreed to straight time rate for hours worked under 40 in a workweek during the Class Period based on the practices alleged herein.

109. Specifically, the Class is further defined as involving: (i) claims for unpaid overtime compensation for Defendants practice of forcing Plaintiffs to work "off the clock" without compensation during unpaid meal breaks and post-shift, which they knowingly suffered and permitted, (ii) claims for unpaid "gap time" compensation for Defendants practice of forcing

16

Plaintiffs to work "off the clock" without compensation during unpaid meal breaks and post-shift, which they knowingly suffered and permitted, (iii) claims for wage statement and wage notice violations for Defendants' failure to provide Plaintiffs' with accurate wage statements on each payday that include the information required by NYLL §195(3), including the correct number of hours worked during the pay period, and failure to provide wage notices at the start of Plaintiffs employment as required by NYLL § 195(1).

110.    Defendants have violated NYCRR 142-2.2 and NYLL §§ 191, 193 by failing to pay Plaintiffs and the putative class at least one and one-half times the New York state minimum wage for all hours worked over 40 during the Class Period pursuant to the same illegal practices and policies alleged above.

111.    Numerosity:   The Proposed Class is so numerous that joinder of all members is impracticable.  Plaintiffs are informed and believe, and on that basis allege, that during the Class Period, Defendants employed over 40 people who satisfy the definition of the Proposed Class.

112.    Typicality:    Plaintiffs' claims are typical of those of the Proposed Class.  The Representative Plaintiff is informed and believe that, like other Field Mechanics the Class Members were subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein concerning the failure to pay proper wages, failure to keep adequate records failure to furnish wage notices, and failure to furnish accurate wage statements.

113.    Superiority:    A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

114.    Adequacy:    The Representative Plaintiff will fairly and adequately protect the interests of the Proposed Class and have retained counsel experienced in complex FLSA and NYLL class and collective action litigation.

115.     Commonality: Common questions of law and fact exist to all members of the Proposed Class and predominate over any questions solely affecting individual members of the Proposed Class, including but not limited to:

a.     Whether Defendants unlawfully failed to pay lawful overtime premiums for all hours worked over 40 in a workweek for those violations stated above;

b.     Whether those violations were pursuant to a common policy or practice applicable to all class members;

c.     Whether Defendants unlawfully failed to pay "gap time" wages to members of the Proposed Class in violation of the NYLL;

d.     Whether Defendants furnished class members with accurate wage statements on each payday containing the information required by NYLL § 195(3);

e.     Whether Defendants furnished class members with accurate wage notices at the start of their employment containing the information required by NYLL § 195(1);

f.     Whether Defendants kept and maintained records with respect to each hour worked by Plaintiffs and the Proposed Class;

g.     Whether those violations were pursuant to a common policy or practice applicable to all class members;

h.     Whether Defendants employed Plaintiffs and the Proposed Class within the meaning of New York law;

i.     The proper measure of damages sustained by the Proposed Class; and

j.     Whether Defendants' actions were "willful."

116.     The case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual members of the class would result in inconsistent

or varying adjudications and create the risk of incompatible standards of conduct for Defendants. Further, adjudication of each individual member's claim as a separate action would be dispositive of the interest of other individuals not party to this action, impeding their ability to protect their interests.

117.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Proposed Class predominate over any questions affecting only individual members of the Proposed Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Defendants' common and uniform policies and practices denied the Proposed Class the wages to which they are entitled. The damages suffered by the individual Proposed Class members are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

118.     Plaintiffs intend to send notice to all members of the Proposed Class to the extent required by Rule 23.   The names and addresses of the Proposed Class are available from Defendants.

119.     During the class period, and upon information and belief, Plaintiffs each worked more than 1 hour of gap time for which they were not paid the lawful minimum wage under either the NYLL and more than 1 hour of overtime-eligible work during the class and collective class periods for which they were not paid a lawful overtime premium of time and one half of their regular rate of pay.

## AS AND FOR A FIRST CAUSE OF ACTION
**(Unlawful Failure to Pay Overtime Compensation under the Fair Labor Standards Act)**

120.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

121.     Plaintiffs consent in writing to be a part of this action, pursuant to 20 U.S.C. § 216(b).  Plaintiffs written consent forms will be filed contemporaneously with this Complaint on the court's docket.  Plaintiffs anticipate that as this case proceeds, other individuals will sign consent forms and join as plaintiffs.

122.     At all relevant times, Defendants have been an "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 20 U.S.C. § 203.  At all relevant times, Defendants have employed and continue to employ employees, including Plaintiffs, and the Collective Members.  At all relevant times, upon information and belief, Defendants have gross operating revenues in excess of $500,000.00.

123.     The FLSA requires each covered employer to compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours per work week.

124.     During their employment with Defendants, within the applicable statute of limitations, Plaintiffs and the other Collective Members worked in excess of forty hours per workweek without lawful overtime compensation.

125.     Despite the hours worked by Plaintiffs and the Collective Members, Defendants willfully, in bad faith, and in knowing violation of the Federal Fair Labor Standards Act, failed and refused to pay them overtime compensation.

126.     Plaintiffs were not paid FLSA mandated overtime premiums uniformly and based on the policies and practices articulated above.

127.    Also, by failing to accurately record, report, and/or preserve records of hours worked by Plaintiffs and the Collective, Defendants have failed to make, keep, and preserve records with respect to each of their employees sufficient to determine their wages, hours, and other conditions and practices of employment, in violation of the FLSA, 20 U.S.C. § 201, et seq.

128.    Defendants have failed to make a good faith effort to comply with the FLSA with respect to its compensation to Plaintiffs and the Collective.

129.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C §§ 216(b) and 255(a).

130.    Because Defendants' violations of the FLSA were willful, a 3-year statute of limitation applies, pursuant to 29 U.S.C. § 255.

131.    Plaintiffs, on behalf of themselves and the Collective, seek recovery of their attorneys' fees and costs to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

132.    Due to Defendants' violations of the FLSA, Plaintiffs and the Collective Members are entitled to recover from Defendants their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action.

## <u>AS AND FOR A SECOND CAUSE OF ACTION</u>
**(Failure to Pay Lawful Overtime Premiums in Violation of NYCRR § 142.2.2 and Article 19 of the NYLL)**

133.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

134.    At all relevant times, Plaintiffs were employees and the Defendants have been employers within the meaning of the New York Labor Law.

135.    The overtime wage provisions of Article 19 of the New York Labor Law and its supporting regulations apply to Defendants.

136.    Defendants have failed to pay Plaintiffs and the Class the overtime wages to which they were entitled under the New York Labor Law.

137.    By Defendants' failure to pay Plaintiffs and the Class Members premium overtime wages for hours worked in excess of 40 hours per week, they have willfully violated the New York Labor Law Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R. Part 142.

138.    Also, Defendants have violated NYCRR 142-2.2 and NYLL §§ 191 and 193 by failing to pay Plaintiffs and the Class at least one and one-half times the minimum wage for all hours worked over 40 in any workweek during the class period.

139.    Due to Defendants' violations of the New York Labor Law, Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## AS AND FOR A THIRD CAUSE OF ACTION
**(Failure to Pay "Gap Time" Wages in Violation of NYLL §§ 191, 193 and 652 and Article 19)**

140.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

141.    At all relevant times, Plaintiffs were employees and the Defendants have been employers within the meaning of the New York Labor Law.

142.    The wage provisions of Article 6 of the NYLL and its supporting regulations apply to Defendants, and protect Plaintiffs.

143.    Pursuant to the agreed-upon terms of their employment, Defendants were required to pay Plaintiffs and the Class Members a set hourly rate for all hours worked.

144.    Defendants failed to pay Plaintiffs and the Class Members their agreed-upon hourly wages (i.e. "gap time" or "straight time" wages") to which they were entitled under the NYLL and supporting New York State Department of Labor Regulations.

145.    Through their knowing or intentional failure to pay agreed-upon wages (i.e. "gap time" or "straight time" wages") to Plaintiffs and the Class, Defendants have willfully violated the NYLL, Article §§ 190 et seq., and the supporting New York State Department of Labor Regulations.

146.    Due to Defendants' willful violations of the NYLL, Plaintiffs and the Putative Wage Class are entitled to recover from Defendants their agreed-upon wages (i.e. "gap time" or "straight time" wages"), liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### AS AND FOR A FORTH CAUSE OF ACTION
**(Failure to Furnish Accurate Wage Statements in Violation of NYLL §195(3))**

147.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

148.    At all relevant times, Plaintiffs were employees and the Defendants have been employers within the meaning of the New York Labor Law.

149.    The recording keeping provisions of Article 19 of the New York Labor Law and its supporting regulations apply to Defendants.

150.    Defendants did not provide Plaintiffs and members of the Rule 23 Class with a legally sufficient wage statement upon the payment of wages, as required by NYLL § 195(3).

151.    NYLL §195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria required under the NYLL.

152.   Due to Defendants' violation of NYLL § 195(3) – failing to provide paystubs that comply with the Wage Theft Prevention Act – Plaintiffs and the Class Members are each entitled to recover $250 per violation, up to a total of $5,000.

### AS AND FOR A FIFTH CAUSE OF ACTION
**(Failure to Furnish Wage Notices in Violation of NYLL §195(1))**

153.   Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

154.   At all relevant times, Plaintiffs and the Class Members were employees and the Defendants have been employers within the meaning of the New York Labor Law.

155.   The recording keeping provisions of Article 19 of the New York Labor Law and its supporting regulations apply to Defendants.

156.   Defendants have willfully failed to supply Plaintiffs and the Class Members with a wage notice, as required by NYLL § 195(1), containing Plaintiffs and the Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rates or rates of pay and overtime rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, an a mailing address if different; the telephone number of the employer; plus such other information as the commission has deemed material and necessary.

157.   Due to Defendants' violation of NYLL § 195(1) – failing to provide the required wage notice within 10 days of Plaintiffs' and the Class Members' hire date(s) as required by the Wage Theft Prevention Act – Plaintiffs and the Class Members are each entitled to recover $50 per day for this violation, up to $5,000.

## PRAYER FOR RELIEF

WHEREFORE, Lead Plaintiffs, on behalf of themselves and all members of the putative class and collective actions, prays for relief as follows:

A.  That the Court determine that this action may proceed as a class action under Rule 23(b)(1) and (3) of the Federal Rules of Civil Procedure;

B.  That Defendants are found to have violated the provisions of the New York Labor Law as to Plaintiffs and the Class;

C.  That Defendants are found to have violated the Federal Fair Labor Standards Act as to Plaintiffs the Collective Class;

D.  That Defendants' violations as described above are found to be willful;

E.  An award to Plaintiffs and the Collective and Class Members for the amount of unpaid wages owed, including interest thereon, and penalties, including liquidated damages, subject to proof at trial;

F.  That Defendants further be enjoined to cease and desist from unlawful activities in violation of the FLSA and NYLL;

G.  That Plaintiffs' counsel and Plaintiff Adam Lipinski can adequately represent the interests of the class as class counsel and class representative, respectively.

H.  An award of reasonable attorneys' fees and costs pursuant to the NYLL and 29 U.S.C. § 216 and/or other applicable law; and

I.  For such other and further relief, in law or equity, as this Court may deem appropriate and just.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury as to all issues so triable.

DATED:  August 4, 2020

Christopher Q. Davis, Esq.
Rachel M. Haskell, Esq.
The Law Office of Christopher Q. Davis
80 Broad Street, Suite 703
New York, New York 10004
646-430-7930 (main)
646-349-2504 (fax)

*Counsel for Plaintiff and the putative Class and Collective*