## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADAM LIPINSKI, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | |
| vs. | **Civil Action No. 19-CV-04534** |
| | **Hon. Judge Steven Tiscione** |
| APPROVED PLUMBING AND FIRE PROTECTION, LLC, APPROVED OIL CO. OF BROOKLYN, INC., VINCENT THEURER and IRA AUSLANDER, | |
| Defendants. | |

## MEMORANDUM OF LAW OF CHRISTOPHER Q. DAVIS IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

I.    THE PERCENTAGE OF THE FUND METHOD IS THE PREFERRED  METHOD FOR
AWARDING ATTORNEYS' FEES IN COMMON FUND  CASES IN THE SECOND
CIRCUIT. .................................................................................................................. 2

II.   THE GOLDBERGER FACTORS SUPPORT CLASS COUNSEL'S
FEE APPLICATION ................................................................................................... 6

    A.   Class Counsel's Time and Labor ................................................................. 6

    B.   Magnitude and Complexity of Litigation ..................................................... 9

    C.   Risk of Litigation ....................................................................................... 11

    D.   Quality of Representation ........................................................................... 14

    E.   Fee in Relation to Settlement ..................................................................... 17

    F.   Public Policy Considerations ..................................................................... 20

III.  LODESTAR CROSS CHECK FURTHER SUPPORTS AN AWARD TO CLASS
COUNSEL OF ONE-THIRD OF THE SETTLEMENT FUND ............................................. 21

IV.   CLASS COUNSEL IS ENTITLED TO REIMBURSEMENT OF THEIR LITIGATION
EXPENSES .............................................................................................................. 24

CONCLUSION ...................................................................................................................... 25

## TABLE OF AUTHORITIES

**CASES**                                                                                       **PAGE(S)**

*A.H. Phillips v. Walling,*
324 U.S. 490 (1945) ........................................................................................................ 20

*Aboud v. Charles Schwab & Co.,*
No. 14 Civ. 2712, 2014 WL 5794655 (S.D.N.Y. Nov. 4, 2014) .................................. 18

*Alleyne v. Time Moving & Storage Inc.,*
264 F.R.D. 41 (E.D.N.Y. 2010) ..................................................................................... 19

*Anderson v. Mt. Clemens Pottery Co.*,
328 U.S. 680 (1946) .................................................................................................. 13

*Ansoumana v. Gristede's Operating Corp.*,
201 F.R.D. 81 (S.D.N.Y. 2001) ................................................................................ 10

*Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany and Albany County Board of Elections*,
522 F.3d 182 (2d Cir. 2008) ....................................................................................... 4

*Asare v. Change Grp. N.Y., Inc.*,
No. 12 Civ. 3371, 2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) ................................. 5

*Barrentine v. Arkansas-Best Freight Sys., Inc.*,
450 U.S. 728 (1981) .................................................................................................... 9

*Beckman v. KeyBank, N.A.*,
293 F.R.D. 467 (S.D.N.Y. 2013) ........................................................................ passim

*Behzadi v. Int'l Creative Mgmt. Partners, LLC*,
No. 14 Civ. 4382, 2015 WL 4210906 (S.D.N.Y. July 9, 2015) ................................. 11

*Cadles of Grassy Meadows II, L.L.C. v. St. Clair*,
No. 10 Civ. 1673, 2012 WL 6617448 (E.D.N.Y. Dec. 18, 2012) .............................. 22

*Chavarria v. N.Y. Airport Serv., LLC*,
875 F. Supp. 2d 164 (E.D.N.Y. 2012) ........................................................................ 4

*Clark v. Ecolab Inc.*,
2010 WL 1948198 (S.D.N.Y. May 11, 2010) ..................................................... 19, 24

*Clem v. Keybank, N.A.*,
2014 WL 2895918 (S.D.N.Y. June 20, 2014) ........................................................... 18

*Davis v. J.P. Morgan Chase & Co.*,
827 F. Supp. 2d 172 (W.D.N.Y. 2011) ..................................................................... 19

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ...................................................................................... 11

*Diaz v. E. Locating Serv.*,
No. 10 Civ. 4082, 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010) .............................. 20

*Dolgow v. Anderson*,
43 F.R.D. 472 (E.D.N.Y. 1968) ................................................................................ 21

*Doo Nam Yang v. ACBL Corp.*,
427 F. Supp. 2d 327 (S.D.N.Y. 2005)........................................................................ 14

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174 (W.D.N.Y. 2005).................................................................... 10, 17, 21

*Fujiwara v. Sushi Yasuda Ltd.*,
No. 12 Civ. 8742, 2014 WL 5840700 (S.D.N.Y. Nov. 12, 2014) ......................... 10, 11

*Goldberger v. Integrated Res. Inc.*,
209 F.3d 43 (2d Cir. 2000)............................................................................... passim

*Grace v. Ludwig*,
 484 F.2d 1262 (2d Cir. 1973)................................................................................. 21

*Griffin v. Astro Moving & Storage Co. Inc.*,
No. 11 Civ. 1844-MKB, 2015 WL 1476415 (E.D.N.Y. Mar. 31, 2015)..................... 22

*Hall v. ProSource Techs., LLC*,
No. 14 CV 2502, 2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016) ............................... 22

*Hernandez v. Immortal Rise, Inc.*,
306 F.R.D. 91 (E.D.N.Y. 2015) ............................................................................. 2, 3

*Hernandez v. Merrill Lynch & Co., Inc.*,
No. 11 Civ. 8472, 2013 WL 1209563 (S.D.N.Y. March 21, 2013)............................ 18

*Hicks v. Morgan Stanley, et. al.*,
No. 01 Civ. 10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ............................ 22

*In re Boesky Sec. Litig.*,
888 F. Supp. 551 (S.D.N.Y. 1995)........................................................................... 23

*In re Colgate-Palmolive Co. ERISA Litigation*,
36 F. Supp. 3d 344 (S.D.N.Y. 2014)........................................................................ 18

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*,
No. 98 Civ. 4318, 2001 WL 709262 (S.D.N.Y. June 22, 2001)................................ 12

*In re Gilat Satellite Networks, Ltd.*,
No. 02 Civ. 1510, 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007).............................. 17

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................ 5, 14

*In re Indep. Energy Holdings PLC Sec. Litig.*,
No. 00 Civ. 6689, 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ........................................ 17, 25

*In re Lloyd's Am. Trust Fund Litig.*,
No. 96 Civ. 1262, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ............................................ 23

*In re NASDAQ Market-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) ..................................................................................................... 3

*In re Nassau Cnty. Strip Search Cases*,
12 F. Supp. 3d 485 (E.D.N.Y. 2014) ............................................................................................ 19

*In re Nigeria Charter Flights Litig.*,
No. 04-CV-304, 2011 WL 7945548 (E.D.N.Y. Aug. 25, 2011)................................................... 19

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*,
991 F.Supp.2d 437 (E.D.N.Y. 2014) .............................................................................................. 4

*In re Polaroid ERISA Litig.*,
03-CV-8335, 2007 WL 2116398 (S.D.N.Y. July 19, 2007) ......................................................... 4

*In re Prudential Sec. Inc. Ltd. P'ship Litig.*,
912 F. Supp. 97 (S.D.N.Y. 1996) .................................................................................................... 9

*In re Ramp Corp. Sec. Litig.*,
No. 05 Civ. 6521, 2008 WL 58938 (S.D.N.Y. Jan. 4, 2008) .................................................... 4, 5

*In re RJR Nabisco, Inc. Sec. Litig.*,
No. 88 Civ. 7905, 1992 WL 210138 (S.D.N.Y. Aug.24, 1992) ................................................... 23

*In re Sumitomo Copper Litig.*,
74 F. Supp. 2d 393 (S.D.N.Y. 1999)........................................................................................... 4, 20

*J.I. Case Co. v. Borak*,
377 U.S. 426 (1964)....................................................................................................................... 21

*Johnson v. Brennan*,
No. 10 Civ. 4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ................................................. 5

*Karpus v. Borelli (In re Interpublic Sec. Litig.)*,
No. 03 Civ. 1194, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) .................................................. 5

*Khait v. Whirlpool Corp.*,
2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ......................................................................... 19, 20

*Khalil v. Original Old Homestead Restaurant, Inc.*,

657 F. Supp.2d 470 (S.D.N.Y. 2009).......................................................................................... 18

*Kosakow v. New Rochelle Radiology Associates, P.C.*,
274 F.3d 706 (2d Cir. 2001)..................................................................................................... 13

*Masters v. Wilhelmina Model Agency, Inc.*,
473 F.3d 423 (2d Cir. 2007)..................................................................................................... 19

*McDaniel v. Cnty. Of Schenectady*,
595 F.3d 411 (2d Cir. 2010)....................................................................................................... 3

*McLaughlin v. IDT Energy*,
2018 WL 3642627 (E.D.N.Y. July 30, 2018) ............................................................................ 3

*Pall Corp. v. 3M Purification Inc.*,
No. 97 Civ 7599, 2012 WL 1979297 (E.D.N.Y. June 1, 2012)................................................ 22

*Parker v. Jekyll & Hyde Entm't Holdings, LLC*,
No. 08 Civ 7670, 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) .......................................... 9, 22, 23

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985)................................................................................................................. 21

*Ramirez v. Lovin' Oven Catering Suffolk, Inc.*,
No. 11 Civ. 520, 2012 WL 651640 (S.D.N.Y. Feb. 24, 2012) ................................................. 23

*Sand v. Greenberg*,
No. 08 Civ. 7840, 2010 WL 69359 (S.D.N.Y. Jan. 7, 2010)............................................... 3, 21

*Savoie v. Merch. Bank*,
166 F.3d 456 (2d Cir. 1999)....................................................................................................... 5

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
258 F. Supp. 2d 254 (S.D.N.Y. 2003)..................................................................................... 3, 4

*Sukhnandan v. Royal Health Care of Long Island LLC*,
No. 12 Civ. 4216, 2014 WL 3778173 (S.D.N.Y. July 31, 2014) ................................... 2, 3, 10, 25

*Taft v. Ackermans*,
No. 02 Civ. 7951, 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007).................................................. 14

*Tiro v. Pub. House Invs., LLC*,
No. 11 Civ. 7679, 2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013) ................................................ 9

*Varljen v. H.J. Meyers & Co.*,
No. 97 Civ. 6742, 2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000) ................................................... 6

*Velez v. Majik Cleaning Service, Inc.*,
03-cv- 8698(SAS)(KNF), 2007 WL 7232783 (S.D.N.Y. June 25, 2007) ...................................... 5

*Velez v. Novartis Pharm. Corp.,*
2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ............................................................................. 20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005)................................................................................................. 2, 3, 4

*Westerfield v. Washington Mut. Bank*,
Nos. 06 Civ. 2817, 08 Civ. 00287, 2009 WL 5841129 (E.D.N.Y. Oct. 8, 2009)......................... 3

*Willix v. Healthfirst, Inc.*,
No. 07 Civ. 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ........................................... 18, 19

*Yuzary v. HSBC Bank USA, N.A.*,
2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ............................................................................... 18

*Zeltser v. Merrill Lynch & Co.,*
No. 13 CIV. 1531 FM, 2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014) ........................................ 23

## STATUTES

29 C.F.R. § 785.11 ...................................................................................................................... 13

FLSA....................................................................................................................................... passim

NYLL .............................................................................................................................. 10, 19, 21, 22

## PRELIMINARY STATEMENT

In connection with the Unopposed Motion for Final Approval of the Class Action Settlement ("Motion for Final Approval"), concurrently filed in the above-captioned action,[1] Plaintiffs respectfully move this Court for an award of attorneys' fees in the amount of one hundred and twenty five-thousand dollars ($125,000) or twenty-eight percent (25%) of the gross settlement amount; reimbursement of attorneys' actual out-of-pocket costs, including settlement administration costs, in the sum of approximately twenty one thousand forty dollars ($21,040).[2]

During the past two years of litigating this class action, Class Counsel spent over 190 attorney, paralegal, and administrative hours prosecuting this case. *See* Declaration of Christopher Q. Davis in Support of Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees and Reimbursement of Expenses dated August 27, 2021 ("Davis Fee Decl.") at ¶ 5, Ex. B. This includes time spent investigating the Named Plaintiffs' claims pre-suit; researching legal issues; drafting a detailed complaint, reviewing hundreds of documents produced by Defendants; collecting, reviewing and producing documents from the Named Plaintiff; interviewing the Named Plaintiff; working with a damages expert to calculate damages for the class; drafting a mediation statement; evaluating outcomes and litigation filings for similar settlement outcomes and preparing for and attending a private mediation; moving this Court for preliminary approval of the class-wide settlement; continuing to negotiate details of the settlement terms with Defendants after initial settlement structure was denied by the Court; assisting with administering the notices; moving this

---

[1] For a detailed account of the factual and procedural background of this case, including settlement negotiations and administration, Class Counsel respectfully refers the Court to the Memorandum of Law and the supporting Declaration of Christopher Q. Davis in connection with the Motion for Final Approval of the same date as this Motion. In addition, any defined terms referred to in this memorandum of law are consistent with those used in the concurrently filed Motion for Final Approval.

[2] As the Court will see from Plaintiffs' counsels' expense report, Plaintiffs were able to keep the actual costs and expenses incurred in litigating this matter at $21,040 and thus will not need the entire $50,000 currently set aside for such expenses in the Settlement Agreement.

Court for final approval of the class-wide settlement; and assisting with administration of the settlement sums. Davis Fee Decl. ¶¶ 40-68. Multiplying these hours by the hourly rate of each attorney, paralegal, and staff member results in a current lodestar amount of approximately $60,000. *Id.* at ¶ 7.

Class Counsel believes that the value of their efforts on behalf of the Class Members is reflected by majority support of the Settlement by the Class Members who received the Notice. *Id.* at ¶ 84. Based on Plaintiffs' pre-settlement investigation and subsequent damages calculations, the recovery calculated on the Gross Settlement Amount is approximately 75% of the alleged underpayment for all Class Members. *Id.* at ¶ 42.

Notwithstanding these strong results, Class Counsel's efforts to date have been without compensation, and their entitlement to payment has been wholly contingent upon the result achieved. *Id.* at ¶ 25.For the reasons set forth below, Class Counsel respectfully submits that the attorneys' fees and expense reimbursements they seek are fair and reasonable under the applicable legal standards and should be awarded considering the contingency risk undertaken and the result achieved.

## <u>ARGUMENT</u>

### I.     THE PERCENTAGE OF THE FUND METHOD IS THE PREFERRED METHOD FOR AWARDING ATTORNEYS' FEES IN COMMON FUND CASES IN THE SECOND CIRCUIT.

In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award. *See, e.g.*, *Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 102 (E.D.N.Y. 2015); *Sukhnandan v. Royal Health Care of Long Island LLC,* No. 12 Civ. 4216, 2014 WL 3778173, at *9 (S.D.N.Y. July 31, 2014); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 477 (S.D.N.Y. 2013); *accord Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). "Where

relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by private attorneys general, attorneys who fill . . . [that] role must be adequately compensated for their efforts." *Beckman*, 293 F.R.D. at 477 (citations and internal quotation marks omitted); *see also Sand v. Greenberg*, No. 08 Civ. 7840, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010) ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected."). If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *See Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 51 (2d Cir. 2000) (commending the general "sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest").

There are two ways to compensate attorneys for successful prosecution of statutory claims—the lodestar method and the percentage-of-the-fund method. *See McDaniel v. Cnty. Of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). The trend in this Circuit is to use the percentage-of-the-fund method in common fund cases like this one. *See, e.g., id.*; *Wal-Mart Stores*, 396 F.3d at 121; *Hernandez*, 306 F.R.D. at 102; *Sukhnandan*, 2014 WL 3778173, at *9; *Westerfield v. Washington Mut. Bank*, Nos. 06 Civ. 2817, 08 Civ. 00287, 2009 WL 5841129, at *4 (E.D.N.Y. Oct. 8, 2009) (following the "trend" and adopting the percentage-of-the-fund method); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261-62 (S.D.N.Y. 2003) (collecting cases adopting the percentage-of-the-fund method); *In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465, 483-85 (S.D.N.Y. 1998) (same).

There are several reasons that courts prefer the percentage method. First, the percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive" to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made. *See Wal-Mart Stores*, 396 F.3d at 121 (internal citation

omitted); *McLaughlin v. IDT Energy*, 2018 WL 3642627, at *7 (E.D.N.Y. July 30, 2018); *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, 991 F.Supp.2d 437, 440 (E.D.N.Y. 2014); *In re Ramp Corp. Sec. Litig.*, No. 05 Civ. 6521, 2008 WL 58938, at *2 n.2 (S.D.N.Y. Jan. 4, 2008).

The percentage of the fund method is also closely aligned with market practices because it "mimics the compensation system actually used by individual clients to compensate their attorneys." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); *see also Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 177 (E.D.N.Y. 2012) ("[T]he percentage method is intended to mirror the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients."); *Strougo ex rel. Brazilian Equity Fund, Inc.*, 258 F. Supp. 2d at 262 (same).

This rationale is consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany and Albany County Board of Elections*, where the court held that a "presumptively reasonable fee" takes into account what a "reasonable, paying client" would pay. 522 F.3d 182, 191 (2d Cir. 2008). Although *Arbor Hill* is not controlling because it does not address a common fund fee application, it supports use of the percentage-of-the-fund method. *Beckman*, 293 F.R.D. at 477 (finding that *Arbor Hill* supported a fee award of one-third of the fund).

Second, the percentage-of-the-fund method promotes early resolution and eliminates the incentive for plaintiffs' lawyers to increase their billable hours by engaging in excessive and wasteful litigation tactics. The percentage method "provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores*, 396 F.3d at 121 (citation omitted); *see also In re Ramp Corp. Sec. Litig.*, 2008 WL 58938, at *2 n.2 (same); *In re Polaroid*

*ERISA Litig.*, 03-CV-8335, 2007 WL 2116398, at *2 (S.D.N.Y. July 19, 2007) (same); *Velez v. Majik Cleaning Service, Inc.*, 03-cv- 8698(SAS)(KNF), 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) (same). This method also discourages plaintiffs' lawyers from running up their billable hours, which is the most significant downside of the lodestar method. *See Savoie v. Merch. Bank*, 166 F.3d 456, 460-61 (2d Cir. 1999) ("It has been noted that once the fee is set as a percentage of the fund, the plaintiffs' lawyers have no incentive to run up the number of billable hours for which they would be compensated under the lodestar method.") (citation omitted); *see also Karpus v. Borelli (In re Interpublic Sec. Litig.)*, No. 03 Civ. 1194, 2004 WL 2397190, at *11 (S.D.N.Y. Oct. 26, 2004) (noting the percentage method is "much simpler"). At this point, the parties resolved this case before incurring the expenses of prolonged summary judgment and class motion practice as well as the expenses of a trial.

Third, the percentage-of-the fund method preserves judicial resources by "reliev[ing] the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Asare v. Change Grp. N.Y., Inc.*, No. 12 Civ. 3371, 2013 WL 6144764, at *17 (S.D.N.Y. Nov. 18, 2013) (quoting *Savoie*, 166 F.3d at 461 n.4). "[T]he primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits." *Goldberger*, 209 F.3d at 48-49 (citation omitted); *see also Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *15 (S.D.N.Y. Sept. 16, 2011) (same); *In re Ramp Corp. Sec. Litig.*, 2008 WL 58938, at *2 n.2. While courts still use the lodestar method as a "cross check" when evaluating the percentage of the fund method, courts are not required to scrutinize the fee records as rigorously. *Goldberger*, 209 F.3d at 50; *see, e.g., In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (using an "implied lodestar" for the lodestar cross check); *Varljen v. H.J. Meyers & Co.*, No. 97 Civ. 6742,

2000 WL 1683656, at *5 (S.D.N.Y. Nov. 8, 2000) (using an "unexamined lodestar figure" for the lodestar cross check).

## II.   THE *GOLDBERGER* FACTORS SUPPORT CLASS COUNSEL'S FEE APPLICATION

Reasonableness is the benchmark for determining attorneys' fees. In *Goldberger*, the Second Circuit articulated six factors for courts to consider in determining the reasonableness of fee applications:

> (1) the time and labor expended by counsel;
> (2) the magnitude and complexities of the litigation;
> (3) the risk of litigation;
> (4) the quality of representation;
> (5) the requested fee in relation to the settlement; and
> (6) public policy considerations.

209 F.3d at 50 (internal quotation marks and citation omitted). All of the Goldberger factors weigh in favor of granting approval of Class Counsel's fee application.

### A.  Class Counsel's Time and Labor

Class Counsel expended substantial time and effort to achieve the $500,000 Gross Settlement Amount on behalf of the Class. Before the initiation of this action, Class Counsel conducted a thorough investigation into the merits of the potential claims and defenses. Davis Fee Decl. at ¶ 59. Class Counsel focused their investigation and legal research on the underlying merits of the Class Members' claims, the damages to which they were entitled, and the appropriateness of class certification. *Id.* at ¶ 60. Prior to filing the Complaint, Class Counsel conducted multiple in-depth interviews with Named Plaintiff and Opt-in Plaintiffs to determine the hours that they worked, the wages they were paid, there compensation structure, the nature of their duties and responsibilities, and other information relevant to their claims. *Id.* at ¶ 61.

After being contacted by the Named Plaintiff and Opt-in Plaintiffs Kulig and Garcia, Class Counsel conducted a thorough investigation into the merits of the potential claims

and defense. *Id*. at ¶ 59. Class Counsel focused their investigation and legal research on the underlying merits of the Plaintiff's claims, the damages to which they were entitled, and the propriety of proceeding on a class and/or collective basis. *Id*. at ¶ 60. Prior to filing the Complaint, Class Counsel had conducted additional follow-up interviews with the Named and Opt in Plaintiffs, as well as at least one other former Mechanic, regarding hours worked, compensation structure and duties. *Id*. at ¶ 61.

After interviewing the Named and Opt-in Plaintiffs, Class Counsel reviewed hundreds of pages of documents produced collectively by and between Plaintiffs and Defendants, including but not limited to pay stubs, employee handbooks, and relevant correspondence. *Id*. at ¶ 62. Based on the information provided by the Named and Opt-in Plaintiffs, other non-party witnesses, and Class Counsel's review of Defendants' productions, Class Counsel was able to fully assess Plaintiffs' litigation risks related to proceeding as a class and/or collective action. *Id*. at ¶ 63.

In preparation for the mediation, Plaintiffs' Counsel reviewed and analyzed summary time and payroll data for the Mechanics, and also analyzed email correspondence, policy documents and other documents received from the Mechanics and Defendants. *Id*. at ¶ 64. In addition to reviewing those documents, Plaintiffs' Counsel also continued to conduct factual investigations of Plaintiffs' claims through detailed questioning of the Named and Opt-in Plaintiffs, particularly with respect to the documents received and reviewed. *Id*. at ¶ 65. Plaintiffs' Counsel also conducted extensive legal research on matters such as class certification standards and risk, decertification standards and risks, factually similar cases, summary judgment risks, risks attendant to off-the-clock litigation, Defendants' anticipated defenses, and Plaintiffs' damages. *Id*. at ¶ 66. Plaintiffs' Counsel was able to use the documents produced from the Plaintiffs to analyze factual issues, evaluate class-wide liability, and calculate and extrapolate a damages calculation

for the entire Class. *Id*. at ¶ 67.

Based on the information provided by the Named and Opt-in Plaintiffs and Plaintiffs' Counsel review of Defendants' productions, Plaintiffs' Counsel was able to fully assess Plaintiffs' litigation risks related to proceeding as a class action. *Id*. at ¶ 68. Litigation risk faced include Defendants likely arguments that Plaintiffs and the Class Members' time spent working off-the-clock was de-minimis and thus not necessarily compensable and that Defendants did not have the requisite knowledge of any time worked off-the-clock and knowledge. *Id*. at ¶ 69.

Following this extensive work, the Parties agreed to mediate, and during the mediation came to a settlement. *Id*. at ¶ 70.

In performing these and other tasks, Class Counsel has expended approximately 190 hours of attorney, paralegal, and staff member time—an aggregate lodestar of approximately $60,000. *Id.* at ¶¶ 5-7.  These hours are reasonable for a case like this one and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff participating in the case. *Id*. Class Counsel used a small team of attorneys and support staff at any one time in order to minimize duplication of efforts and maximize billing judgment and made every effort to have the work performed by the attorney, paralegal, or other support staff with the lowest hourly rate who was able to perform it effectively. *Id.* at ¶ 30.

Moreover, the requested fee is not based solely on time and effort already expended; rather, it is also meant to compensate Class Counsel for time that will be spent assisting administration of the settlement in the future. *Id.* at ¶ 86; *see Beckman*, 293 F.R.D. at 482 ("Class Counsel is often called upon to perform work after the final approval hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and sometimes litigating disagreements with defendants about administering the settlement and distributing the

fund"); *see also Tiro v. Pub. House Invs., LLC*, No. 11 Civ. 7679, 2013 WL 4830949, at *13 (S.D.N.Y. Sept. 10, 2013) (fee award also compensates Class Counsel for future time spent administering the settlement); *Parker v. Jekyll & Hyde Entm't Holdings, LLC*, No. 08 Civ. 7670, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) ("[A]s class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time."). In Class Counsel's experience, administering class settlements of this size requires substantial and ongoing commitment. Davis Fee Decl. at ¶ 86. As is common in wage and hour class actions, Class Counsel expects to respond to Class Member inquiries even after final approval, especially after settlement checks are issued. *Id.*

### B. <u>Magnitude and Complexity of Litigation</u>

The magnitude of this Litigation, involving approximately 66 Class Members and the complexity of the factual and legal questions involved, further support the reasonableness of the requested fee award. Under the second *Goldberger* factor, the size and complexity of the issues in a case are significant factors to be considered in making a fee award. *Goldberger*, 209 F.3d at 50; *see In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 912 F. Supp. 97, 101 (S.D.N.Y. 1996). The Supreme Court has acknowledged that wage and hour cases involve complex legal issues: "FLSA claims typically involve complex mixed questions of fact and law . . . . These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981).

"Among FLSA cases, the most complex type is the 'hybrid' action brought here, where state wage and hour violations are brought as an 'opt out' class action pursuant to Rule 23 in the

same action as the FLSA 'opt in' collective action pursuant to 29 U.S.C. §216(b)." *Sukhnandan*, 2014 WL 3778173, at *10. "Justice is served and consistency and efficiency are achieved by having the litigation in one forum because the same set of operative facts are being applied and analyzed under both statutory frameworks." *Beckman*, 293 F.R.D. at 479 (citing *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 89 (S.D.N.Y. 2001)).

This case involved several mixed questions of law and fact. In particular, the Parties disputed the facts surrounding whether Defendants violated the FLSA and NYLL by requiring Plaintiff and the putative class and collective to work "off-the-clock" and not compensating them for such time and whether there were time-shaving practices for clocked time. Davis Fee Decl. at ¶ 28. Notably, the Named Plaintiff's theory of certification is based on a time shaving policy and off-the-clock work during unpaid lunch breaks, which he alleges was a common practice of Defendants and is facially unlawful. *See Beckman*, 293 F.R.D. at 479 (size and complexity of the case, including mixed questions of law and fact, supported attorneys' fee award of one third of the common fund); *see also Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005) (mixed questions of law and fact supported court's award of attorneys' fees representing approximately 40% of the common fund).

Some wage and hour matters are much more complicated and riskier than others. Notably, this case differs markedly from the kinds of wage and hour cases which have been described as "not unduly complex". *See Fujiwara v. Sushi Yasuda Ltd.*, No. 12 Civ. 8742, 2014 WL 5840700 (S.D.N.Y. Nov. 12, 2014). This case is unlike *Fujiwara*, where "obligations under the FLSA and NYLL [were] relatively clear and liability turn[ed] on factual issues." *Id.* at *7. Here, Defendants contends that its compensation policies were lawful, and questioned whether management would have had the requisite knowledge of off-the-clock work where, as the case is here, the class

10

members were out in the field at various different work sites and not under the direct supervision of management. Davis Decl. at ¶ 28. Class certification and liability are far from certain and would have required thousands of additional hours of attorney time, and tens of thousands of dollars in costs to establish. In addition, Plaintiffs would have had to overcome Defendants' likely arguments about potentially individualized questions regarding knowledge of overtime hours worked and individual damages amounts based on hours worked, and other issues potentially precluding class certification and supporting decertification of the Collective. *Id.*

In *Fujiwara*, on the other hand, the court noted that "it would likely not have been difficult to certify a class of employees working the same positions as the Class Representatives at a single restaurant location." 2014 WL 5840700 at *7. However, here, Defendants will argue: (i) Defendants have never had a common policy that violated the FLSA and instead maintain company policies and training materials that emphasize that they pay all employees for all hours worked; and (ii) that the various job sites the putative class members' worked at are so different that a determination of whether, when, and how much they worked off-the-clock or were denied meal breaks would require individualized determinations, making certification and ultimately a trial on a class-wide basis impractical.

Since *Fujiwara*, other judges in this Circuit have continued to follow the more common practice of awarding a percentage of a settlement fund in wage and hour actions where settlement is reached early in the litigation, particularly when complex legal and factual issues make liability and class certification far from certain. *See, e.g., Behzadi v. Int'l Creative Mgmt. Partners, LLC*, No. 14 Civ. 4382, 2015 WL 4210906, at *2-3 (S.D.N.Y. July 9, 2015) (approving attorneys' fees award of one-third of the fund in case brought on behalf of unpaid interns).

11

### C. **Risk of Litigation**

The risk of litigation is another important factor in determining a fee award. Uncertainty that a recovery will be obtained is highly relevant in determining the reasonableness of a fee award. *See Detroit v. Grinnell Corp.,* 495 F.2d 448, 470-71 (2d Cir. 1974), *abrogated on other grounds by Goldberger,* 209 F.3d 43. "[D]espite the most rigorous and competent of efforts, success is never guaranteed." *Id.* at 471.

The substantial risk of Class Counsel recovering no compensation after years of litigation supports Class Counsel's anticipated fee request. "Contingency risk is the principal, though not exclusive, factor courts should consider in their determination of attorneys' fees." *Beckman*, 293 F.R.D. at 479 (quoting *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 Civ. 4318, 2001 WL 709262, at *6 (S.D.N.Y. June 22, 2001)).

Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of tremendous risk. Davis Fee Decl. at ¶ 25. Large-scale wage and hour cases of this type are, by their very nature, complicated and time-consuming. *Id.* Any lawyer undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make a major investment of time, energy, and resources. *Id*. Also, due to the contingent nature of the fee arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. *Id*. Here, Class Counsel stood to gain nothing in the event the case was unsuccessful. *Id*.

Moreover, the facts and circumstances of this case presented numerous hurdles to a successful recovery. *Id*. at ¶ 28. Defendants' primary defense is factual: work while clocked out during an unpaid lunch break occurred nowhere near as pervasively as alleged, and, for the

majority of shifts, it did not occur at all. *Id*. Additionally, almost all Class Members were not required to travel in Defendants' trucks to the job sites, but rather met at the job site and left from the job site, meaning they were not required to perform any post-shift work while driving back to the depot. *Id*. Thus, Defendants believe that they will be able to show the amount of unpaid time worked by Class Members driving trucks back and forth to the depot was either significantly less than Plaintiff alleges or non-existent for some Class Members. *Id*.

Obviously, another defense is that if employees were paid, there is no liability for any off-the-clock work. *Id*. Defendants allege that discovery will reveal that Class Members would often record additional time on clock shark, the timekeeping system, to account for time worked during a lunch break or beyond the end of their shift, so that Class Members would be paid for that time. *Id*.

Alternatively, Plaintiff believes he will be able to establish liability for unpaid overtime hours for which he and the class was not properly compensated, and that Defendants had actual or constructive knowledge of that work. *Id*. at ¶ 28; *See Kosakow v. New Rochelle Radiology Associates, P.C.*, 274 F.3d 706, 718 (2d Cir. 2001), citing 29 C.F.R. § 785.11 (an employee must be compensated for time worked outside his scheduled shift, even if the employer did not request that the employee work, "so long as the employer knows or has reason to believe that the employee is continuing to work, and that work was "suffered or permitted" by the employer.").

Finally, given Plaintiff's allegation that Defendants failed to record all the hours worked, Plaintiff will argue that they are therefore entitled to the lenient *Anderson* standard to estimate damages. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) (when "the employer's records are inaccurate or inadequate" the employee has "carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces

sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."). An employee may meet this standard through estimates based on his own recollection and courts have held that "when choosing between an over inclusive estimate by an employee and an under inclusive one by an employer, it is not unreasonable for a district court to adopt the employee's estimate." *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 339 n. 17 (S.D.N.Y. 2005).

Despite very real risks, Class Counsel took this case despite being a small firm with limited resources. *Id.* at ¶¶ 10, 25. Class Counsel invested approximately $22,000 in actual costs, inclusive of the costs associated with engaging a claims administrator. *Id.* at ¶ 31. The $22,000 does not, however, including the additional costs Class Counsel incurred by hiring interns and contract lawyers to assist with litigation without any guarantee of success. *Id.* at ¶ 32. Class Counsel takes on difficult cases like this one because Counsel believes it is important work. *Id.* at ¶ 33. Class Counsel takes seriously Counsel's responsibility to continue to move the law in a direction favorable for employees, despite the risk of major losses. *Id.* at ¶ 34. While Plaintiffs believe that they could ultimately establish both liability and damages here, this would require significant factual development and legal argument. *Id.* at ¶ 35. Class Counsel is experienced and pragmatic, and understands that the resolution of liability issues, the outcome of a potential trial, and the inevitable appeals process are inherently uncertain in terms of both the outcome and the duration. *Id.* at ¶ 36. Despite these risks, Class Counsel secured a beneficial settlement for the Class Members. *Id.* at ¶ 37. Accordingly, the risk of litigation weighs clearly in favor of Class Counsel's request for attorneys' fees.

### D.  Quality of Representation

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained, and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007) (citing *In re Global Crossing*, 225 F.R.D. at 467).

The recovery obtained was substantial. Defendants agreed to pay a total of $500,000 to settle this litigation. The settlement represents a substantial recovery for Class Members, particularly in light of the very real risks of litigation.  Davis Fee Decl. ¶ 42. These risks included the risk of losing class certification, having the class decertified, losing on the merits, and losing on appeal. *Id.* at ¶ 47.

Plaintiffs' calculation of total damages based on pre-settlement investigation further supports the conclusion that Class Members will receive adequate compensation for the underpayment of wages. *Id.* at ¶ 48. Relative to this estimate, Plaintiffs believe that the Settlement Amount represents a good recovery for the class in light of the very real risk that Plaintiffs would not prevail on any claims since the monetary settlement contemplates compensation at for all Class Members who submitted a Claim Form to participate in the settlement. *Id.* at ¶ 49.

The $500,000 Gross Settlement Amount represents an even greater value since it not only compensates Participating Class Members and represents what may be the best result possible; it also gives Participating Class Members a more immediate payment without the attendant delays of litigation, including trial and potential appeal. Notably, based on Plaintiffs' Counsel pre-settlement investigation and subsequent damages calculations, the recovery calculated on the Gross Settlement Amount is approximately 75% (in some instances up to 80%) of the alleged underpayment for all Class Members. Davis Decl. at ¶ 42. Moreover, in ensuring 70% of the fund, regardless of participation rates, Class Counsel was able to ensure an even more

robust settlement share to those Participating Class Members. To calculate damages, Plaintiffs'
Counsel provided the Expert with (1) assumptions regarding off-the-clock time worked during
lunch breaks; (2) data reflecting instances where the Named Plaintiff captured screen shots of his
time clock compared with his pay statements to determine and average number of hours shaved
each week; and (3) a database with the dates of employment, rates of pay, and average weekly
hours worked, necessary for computing unpaid wages for the Class Members. *Id*. at ¶ 42.

Plaintiffs' Counsel, with the assistance of the Expert, conducted a detailed examination of
the evidence of time shaving from the Named Plaintiff to best understand the usefulness and how
to extrapolate out to the entire class when calculating class-wide damages. *Id*. at ¶ 43. Specifically,
the Expert did an analysis of the percentage of hours worked that were underpaid based on the
evidence of time shaving, but then also accounted for the fact that we only had documentation (*i.e.*,
screen shots of the clocked time) for four (4) weeks worked. *Id*. at ¶ 44. The average underpayment
of reported hours was 11%, with a minimum of 8.8% and a maximum of 14%. *Id*. Based on the
scarce records, and discussions with Plaintiffs as to the frequency and amount of such shaving, the
Plaintiff assumed 8.8% of reported hours were shaved each week (resulting in either straight time
or overtime damages, depending on the total hours worked that week). *Id*.

In addition, Plaintiff also assumed that, on average, worked during 2 to 3 unpaid lunch
breaks week about 40 weeks a year, averaging out to about 1 hour unpaid each week (resulting in
either straight time or overtime damages, depending on the total hours worked that week). *Id*. at ¶
45. Finally, Defendants produced the average weekly hours each Class Member worked. *Id*.
Because Plaintiff only had average hours worked, Plaintiff's Expert made an assumption as to how
frequently Class Members worked more than their average weekly hours or less than their average

weekly hours. *Id*. This was used for purposes of whether the damages would be calculated at an overtime or straight time rate. *Id*.

Based on these assumptions, the Expert was able to apply the assumptions on a weekly basis to each Class Member to then come up with total unpaid hours, both recorded or unrecorded, and total damages, both straight time and overtime. *Id*. at ¶ 46; *see also* Ex. 2.

Class Counsel has significant experience prosecuting large-scale wage and hour class and collective actions—weighing in favor of approval of their requested fees. *Id.* at ¶¶ 11-24. In addition to actively litigating several wage and hour class actions, courts in this Circuit have found Christopher Davis and Rachel Haskell to be adequate class counsel in many other wage and hour cases. *Id*. Throughout his career in private practice, whether as lead associate or partner, Christopher Davis has been appointed class counsel more than fifteen (15) times. *Id.* at ¶¶ 18-21. Moreover, Rachel Haskell, the lead associate, and now junior partner working on this matter, has also been appointed class counsel in this Circuit numerous times. *Id.* at ¶ 23.

Class Counsel's skill and experience were directly responsible for the favorable settlement and weigh in favor of granting the requested fees. *See Velez*, 2007 WL 7232783, at *8 (holding that "Lead Counsel's experience representing plaintiffs in class actions" supported a 31% contingency fee award); *Frank*, 228 F.R.D. at 189 (citing plaintiffs' counsel's experience as one factor supporting an attorneys' fee award of 40% of the fund).

### E.  Fee in Relation to Settlement

Courts also consider the size of the settlement to ensure that the percentage awarded does not constitute a "windfall." *See In re Gilat Satellite Networks, Ltd.*, No. 02 Civ. 1510, 2007 WL 2743675, at *16 n.41 (E.D.N.Y. Sept. 18, 2007). "The percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the

settlement." *Beckman*, 293 F.R.D. at 481 (quoting *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689, 2003 WL 22244676, at *6 (S.D.N.Y. Sept. 29, 2003)). Where the size of the fund is relatively small, courts typically find that requests for a greater percentage of the fund are reasonable. *See In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *5, *16 n.41 (finding a 30% fee would not constitute a windfall "[g]iven the modest size of the [$20 million] settlement"); *see also Beckman*, 293 F.R.D. at 481 (a 33% fee is not a windfall "because the requested amount is 'consistent with the norms of class litigation in this circuit'" (quoting *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *6-7 (E.D.N.Y. Feb. 18, 2011)). In FLSA cases, "one of the most important factors a court should consider in awarding fees is the degree of success obtained" and "the simple disproportion between a plaintiff's recovery and the fee applied for is not a proper basis for a reduction in an otherwise reasonable fee." *Khalil v. Original Old Homestead Restaurant, Inc.*, 657 F. Supp.2d 470, 478 (S.D.N.Y. 2009) (citations omitted).

The size of the $500,000 settlement weighs in favor of granting the requested fee award of just under one third or twenty-five percent of (25%) of the Gross Settlement Amount.[3] Courts in this Circuit have routinely granted requests of similar percentages of the fund in cases with settlement funds similar to or substantially larger than this one. *See, e.g.*, *Aboud v. Charles Schwab & Co.*, No. 14 Civ. 2712, 2014 WL 5794655, at *5 (S.D.N.Y. Nov. 4, 2014) (granting plaintiffs' request for an attorney fee award of one-third of the $3.8 million fund in wage and hour settlement); *Clem v. Keybank, N.A.*, 2014 WL 2895918, at *1, *9-10 (S.D.N.Y. June 20, 2014)

---

[3] Twenty-five percent of the common fund is squarely within the average awarded fee percentage for settlements of similar value. *See In re Colgate-Palmolive Co. ERISA Litigation*, 36 F. Supp. 3d 344, 349–50 & n.1, n.2 (S.D.N.Y. 2014) (examining empirical studies that reviewed the "[h]istorical data of fees awarded in common fund cases" to assess the appropriate fee award in common fund cases and finding the average fee percentage of 26.4% with a standard deviation of 9.8% in settlements of a similar size to the one in this case, meaning that fee percentages frequently were above 33.33%).

(awarding class counsel 33% fee award in $3,500,000 settlement of wage and hour misclassification class action); *Yuzary v. HSBC Bank USA, N.A.*, 2013 WL 5492998, at *1, *9-10 (S.D.N.Y. Oct. 2, 2013) (awarding attorneys' fee totaling 31.7% of $15,625,000 fund in wage and hour settlement); *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2013 WL 1209563, at *1, *8-10 (S.D.N.Y. March 21, 2013) (awarding 33% of a $7 million settlement in a FLSA and NYLL misclassification case); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 178, 183-87 (W.D.N.Y. 2011) (awarding one-third fee in $42 million settlement); *Willix*, 2011 WL 754862, at *1, *6-7 (awarding one-third of $7.675 million settlement fund in wage and hour class action); *Clark v. Ecolab Inc.*, 2010 WL 1948198, at *2, *8-9 (S.D.N.Y. May 11, 2010) (awarding class counsel one-third of $6 million settlement fund in wage and hour class action); *Khait v. Whirlpool Corp.*, 2010 WL 2025106, at *1, *8-9 (E.D.N.Y. Jan. 20, 2010) (awarding class counsel 33% of $9.25 million settlement fund in FLSA and multi-state wage and hour case).

Moreover, according to Second Circuit precedent, Class Counsel's fee should be calculated as a percentage of the gross settlement sum made available to the class, not the net settlement claimed. The Second Circuit is clear that an "allocation of fees by percentage should . . . be awarded on the basis of the total funds made available, whether claimed or not." *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007). "[T]he value of legal services rendered in the creation of a settlement fund [is not] diminished by the failure of beneficiaries to cash in, regardless of what happens to the surplus." *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 59 (E.D.N.Y. 2010); *see also Masters*, 473 F.3d at 437 (reversing the lower court and holding that "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class" and thus fees should be allocated based on "total funds made available, whether claimed or not"); *In re Nassau Cnty. Strip Search Cases*, 12 F. Supp. 3d

485, 492–93 (E.D.N.Y. 2014) (noting "that the percentage is applied to the total amount recovered on behalf of the class (i.e. the 'common fund'), not to the lesser sum that in all probability will be claimed by members of the class from that fund"); *In re Nigeria Charter Flights Litig.*, No. 04-CV-304, 2011 WL 7945548, at *5 (E.D.N.Y. Aug. 25, 2011) (holding that controlling Second Circuit precedent set forth in *Masters* requires the percentage of the common fund be based on the entire fund, not the value of claims made), *report and recommendation adopted*, No. 04-CV-304, 2012 WL 1886352 (E.D.N.Y. May 23, 2012); *Velez v. Novartis Pharm. Corp.,* 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010) ("[T]his Circuit has ruled that '[a]n allocation of fees by percentage should therefore be awarded on the basis of total funds made available **whether claimed or not.'**" (quoting *Masters,* 473 F.3d at 437)).

As explained above, the *Goldberger* factors govern the percentage-of-the-fund fee award, not the amount claimed by class members. *Diaz v. E. Locating Serv.*, No. 10 Civ. 4082, 2010 WL 5507912, at *8 (S.D.N.Y. Nov. 29, 2010) ("[A]lthough the percentage-of-recovery here is based on the entire settlement fund, including the amount that will revert to defendants, rather than on the portion of the fund equal to the claims actually made, the fee requested is nevertheless reasonable in light of the *Goldberger* factors."). As such, Class Counsel's fee request of twenty-five percent (25%), which is less than one-third of the Gross Settlement Amount, is consistent with the norms of class litigation in this Circuit.

### F. Public Policy Considerations

Public policy considerations also weigh in favor of granting Class Counsel's requested fees. In awarding attorneys' fees, "the Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d at

399. The FLSA and state wage and hour laws are remedial statutes designed to protect workers. *See A.H. Phillips v. Walling,* 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective—ensuring that every employee receives "a fair day's pay for a fair day's work"). Fair compensation for attorneys who take on such litigation furthers the remedial purpose of the statutes. *Khait*, 2010 WL 2025106, at *8 ("Attorneys who fill the private attorney general role must be adequately compensated for their efforts. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk."); *Sand*, 2010 WL 69359, at *3 ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.").

Courts have recognized that fee awards in cases like this serve the dual purposes of encouraging "private attorneys general" to seek redress for violations and discourage future misconduct of a similar nature. *See Dolgow v. Anderson*, 43 F.R.D. 472, 487 (E.D.N.Y. 1968), *reversed and remanded on other grounds*, 438 F.2d 825 (2d Cir. 1970). Class actions are also an invaluable safeguard of workers' rights. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985); *cf. J.I. Case Co. v. Borak*, 377 U.S. 426, 433-34 (1964). If courts denied sufficient attorneys' fees, "no attorneys . . . would likely be willing to take on . . . small-scale class actions. . . ." *Frank*, 228 F.R.D. at 189. Courts, therefore, look with favor upon awarding attorney fees in class actions that "encourage the vigilance of private attorneys general to provide corporate therapy protecting the public investor who might otherwise be victimized." *Grace v. Ludwig*, 484 F.2d 1262, 1267 (2d Cir. 1973).

In this case, public policy considerations weigh heavily in favor of awarding Class Counsel's requested fee. The requested fees will encourage private attorneys, such as Class Counsel, to investigate and prosecute similar claims, and will encourage employers to review their

own pay practices in order to ensure that they are in full compliance with the requirements of the FLSA and NYLL.

## III. LODESTAR CROSS CHECK FURTHER SUPPORTS AN AWARD TO CLASS COUNSEL OF ONE-THIRD OF THE SETTLEMENT FUND

Following *Goldberger*, courts usually apply the percentage method and loosely use the lodestar method as a "baseline" or as a "cross check." *Goldberger*, 209 F.3d at 50. The Second Circuit "encourage[s] the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage." *Id.* (citation omitted); *see also Parker*, 2010 WL 532960, at *2 (endorsing the *Goldberger* "cross-check[]"). As part of the cross check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate. *See Hicks v. Morgan Stanley, et. al.*, No. 01 Civ. 10071, 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005). In calculating the lodestar for cross-check purposes, "the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50 (citation omitted). Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case . . . ." *Id.*

In this district, hourly rates of approximately $400-$500 for partners, $200-$350 for senior associates, $100-200 for junior associates and $75-$100 for law clerks have been awarded in employment cases. *See e.g. Hall v. ProSource Techs., LLC*, No. 14 CV 2502, 2016 WL 1555128, at *12 (E.D.N.Y. Apr. 11, 2016) (holding that a partner with twelve years of experience in litigating FLSA and NYLL wage and hour lawsuits should be awarded an hourly rate of $450); *Griffin v. Astro Moving & Storage Co. Inc.*, No. 11 Civ. 1844-MKB, 2015 WL 1476415, at *8 (E.D.N.Y. Mar. 31, 2015) ("[R]ecent opinions issued by courts within the Eastern District of New York have found reasonable hourly rates to be approximately $300–$450 for partners, $200–$325 for senior associates, and $100–$200 for junior associates." (citation omitted)); *Pall Corp. v. 3M Purification*

*Inc.,* No. 97 Civ. 7599, 2012 WL 1979297, at *4 (E.D.N.Y. June 1, 2012) (collecting cases); *Cadles of Grassy Meadows II, L.L.C. v. St. Clair,* No. 10 Civ. 1673, 2012 WL 6617448, at *2 (E.D.N.Y. Dec. 18, 2012) ("In the Eastern District of New York, courts have determined reasonable hourly rates to be approximately $300–[$]450 per hour for partners, $200–$300 per hour for senior associates, and $100–$200 per hour for junior associates." (internal quotation marks omitted)) (collecting cases).

Courts then consider whether a multiplier is warranted based on factors such as: "(i) the contingent nature of the expected compensation for services rendered; (ii) the consequent risk of non-payment viewed as of the time of filing the suit; (iii) the quality of representation; and (iv) the results achieved." *In re Boesky Sec. Litig.*, 888 F. Supp. 551, 562 (S.D.N.Y. 1995); *see also Parker*, 2010 WL 532960, at *2. Courts regularly award lodestar multipliers from 2 to 6 times lodestar. *See, e.g.*, *Zeltser v. Merrill Lynch & Co.,* No. 13 CIV. 1531 FM, 2014 WL 4816134, at *9 (S.D.N.Y. Sept. 23, 2014) (awarding 5.1 multiplier); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.,* No. 11 Civ. 520, 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012) (granting attorneys' fees equal to 6.8 times lodestar); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (noting a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *In re RJR Nabisco, Inc. Sec. Litig.,* No. 88 Civ. 7905, 1992 WL 210138, at *5 (S.D.N.Y. Aug.24, 1992) (awarding multiplier of six).

Here, a lodestar crosscheck further supports that Class Counsel's fee request of twenty-five percent (25%) of the fund is appropriate. The actual lodestar amount, to date, in this matter is calculated at approximately $60,000. *See* Ex. B. However, based on Plaintiffs' Counsel's experience in finalizing and administering class action settlements of this size, Plaintiffs' Counsel

anticipates many additional hours assisting with the administration of the settlement checks and answering phone calls with questions from approximately 66 class members. The lodestar amount to date was calculated using an hourly rate of the lodestar amount to date was calculated using an hourly rate of $500 for attorney Christopher Davis, $375 for attorney Rachel Haskell when she was a Senior Associate and increasing to $400 when she became a Junior Partner, $200 for attorneys Precious Lewis as a Junior Associate, and an hourly rate of $100 for the law clerks, paralegals and other administrative employees.

Class Counsel is requesting only a small premium—2.08 multiplier—on their lodestar to compensate them for the contingent risk factor. Davis Fee Decl. ¶ 7. To date, Class Counsel has spent approximately 190 hours litigating, settling and seeking approval of this class action. *Id.* at¶ 5, Ex. B. The time spent by Class Counsel is described in the accompanying Davis Fee Declaration and Class Counsel's contemporaneous time records attached thereto. *Id.*, Ex. B. The hours worked by Class Counsel result in a lodestar of approximately $60,000.  *Id.* at ¶ 7. Moreover, "[b]ecause class counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower because the award includes not only time spent prior to the award, but after in enforcing the settlement." *Beckman*, 293 F.R.D. at 482 (internal quotation marks and citations omitted). As such, the ratio of Class Counsel's lodestar to the twenty-five percent fee request will continue to diminish over time as Class Counsel spends additional time working on this case, including preparing for and attending the final fairness hearing, responding to phone calls from the Class Members, and answering question from the Claims Administrator. Davis Fee Decl. ¶ 86; *see Clark*, 2010 WL 1948198, at *9 (holding that a fee request was reasonable as it would compensate class counsel

not only for time and effort expended, but also "for time that they will be required to spend administering the settlement going forward").

## IV.   CLASS COUNSEL IS ENTITLED TO REIMBURSEMENT OF THEIR LITIGATION EXPENSES

Pursuant to the Settlement Agreement and approved Class Notice, Class Counsel may seek reimbursement of no more than $50,000 in litigation costs and expenses. *See* Davis Fee Decl. ¶ 8, Exs. C and D.  "Courts typically allow counsel to recover their reasonable out-of-pocket expenses." *Sukhnandan*, 2014 WL 3778173, at *15 (citing *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003)).  Here, Class Counsel worked hard to keep costs down for the class and have only incurred about $21,000, which includes the cost of engaging the claims administrator. *See* Davis Fee Decl. ¶ 5. Given that Class Counsel's unreimbursed expenses, which includes the Claims Administrators' fees and costs were incidental and necessary to the representation of the Class, they should be approved at the actual amount incurred leaving any amounts allocated to costs not incurred in the Net Settlement Fund. Davis Fee Decl. ¶ 8.

### CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Unopposed Motion for Approval of Attorneys' Fees and Reimbursement of Expenses and enter an Order: (i) awarding attorneys' fees in the amount of twenty-five percent (25%) of the Gross Settlement Amount, or $125,000.00; (ii) Class Counsel's actual out of pocket costs and expenses; and (iii) granting such other, further, or different relief as the Court deems just and proper.

Dated: August 27, 2021
      New York, New York

                      Respectfully submitted,
                      _____/s/_____
                      Christopher Q. Davis, Esq. (CD-7282)

Rachel M. Haskell (RH-8248)
**The Law Office of Christopher Q. Davis, PLLC**
80 Broad Street, Suite 703
New York, New York 10004
Telephone: (646) 430-7930
*Class Counsel*